DECISION
Before the Court is the petition of the plaintiff, Joseph Crocker (Crocker) for a preliminary injunction, as well as the objection thereto of defendants, Marilyn Pielch (Pielch), Town of Cumberland (Town), Anthony Silva (Silva) and Town of Cumberland Police Department (Department). Jurisdiction is pursuant to Super. R. Civ. P. 65.
 FACTS AND TRAVEL
Since April 1974, plaintiff has been employed as a police officer for the Town of Cumberland. As a Cumberland Police Officer, Crocker was represented by Cumberland Lodge No. 14, Fraternal Order of Police (Union) in all collective bargaining negotiations with the Town. The Union had served as the sole collective bargaining representative for Department officers for the more than 20 year period during which the defendants and the Union entered into collective bargaining agreements covering the employment terms of Department officers.
On July 1, 1990, defendants and the Union entered into a collective bargaining agreement which, for the first time, contained a mandatory retirement provision that required officers to retire after 26 years of service with the Department. This provision remained in each successive collective bargaining agreement negotiated by the parties from 1990 through the present agreement (Agreement) which expired in June 2001. At the inception of the latest Agreement, the earliest a current officer started working was when he was 20 years old, and the latest a current officer started working was when he was 35 years old.
In April 2000, Crocker completed 26 years of service in the Cumberland Police Department, attaining the ultimate rank of Captain in the Department. Prior to completion of his 26th year of service in April 2000, Crocker received notice, in accordance with the terms of the mandatory retirement provision contained in the 1998-2001 Agreement, that he would be required to retire from his position in the Department upon completion of his 26th year of service.
After receiving this notice, Crocker filed a claim of age discrimination with the Rhode Island Commission for Human Rights (Commission) pursuant to R.I.G.L. § 28-5-7 et seq., asserting that implementation of the contract provision would constitute age discrimination on defendants' part. He also filed a complaint in Superior Court alleging age discrimination in violation of R.I.G.L. § 42-112-1et seq. After discussion among counsel, pursuant to R.I.G.L. §28-5-7.1, Crocker was informed that he would be allowed to continue working until the end of the calendar year of his 26th year of service. In other words, he was allowed to continue work until December 31, 2000 rather than April 30, 2000, the end of his 26th year of service to the Department. Crocker agreed to continue in his capacity as a police Captain for the Town.
Thereafter, Crocker received a notice of right to sue from the Commission and filed an amended complaint on November 27, 2000 alleging that the application of the mandatory retirement provision of the 1998-2000 collective bargaining agreement constitutes age discrimination on the defendants' part in violation of R.I.G.L. § 28-5-7 et seq. On December 21, 2000, just prior to the expiration of Crocker's 26th year with the Department, he sought and was granted a temporary restraining order by this Court, Gagnon, J., in order to maintain the status quo pending the outcome of this action. A hearing on these issues was held before this Court on June 26, 2000.
 PRELIMINARY INJUNCTION
There are three issues that a hearing judge must address when deciding whether to grant a preliminary injunction. First, the moving party must demonstrate that he or she has a reasonable likelihood of succeeding on the merits of its claim at trial. The Fund for Community Progress v.United Way of Southeastern New England, 695 A.2d 517, 521 (R.I. 1997) (citations omitted). The moving party must only make a prima facie case and need not demonstrate a certainty of success. Id. In order to establish a prima facie case, the moving party must present some "amount of evidence that, if unrebutted, is sufficient to satisfy the burden of proof on a particular issue." Paramount Office Supply Company, Inc. v.D.A. McIsaac, Inc., 524 A.2d 1099, 1102 (R.I. 1987) (quoting Nocera v.Lembo, 397 A.2d 524 (R.I. 1979)).
Next, the party seeking the preliminary injunction must show that it will suffer some irreparable harm which is imminent and for which no adequate legal remedy exists to restore the plaintiff to its rightful position. The Fund for Community Progress v. United Way of SoutheasternNew England, 695 A.2d at 521. The moving party must present some "statistical evidence or other data" before the hearing judge may find irreparable harm or likelihood of success on the merits. Paramount OfficeSupply Company, Inc. v. D.A. McIsaac, Inc., 524 A.2d at 1102.
Only after finding a likelihood of success on the merits and an immediate injury should the Court balance the "equities of the case by examining the hardship to the moving party if the injunction is denied, the hardship to the opposing party if the injunction is granted and the public interest in denying or granting the requested relief." The Fund forCommunity Progress v. United Way of Southeastern New England, 695 A.2d at 521; In re State Employees' Unions, 587 A.2d 919, 925 (R.I. 1991). In this analysis, the hearing judge should recognize that:
 "the office of a preliminary injunction is not ordinarily to achieve a final and formal determination of the rights of the parties or of the merits of the controversy, but is merely to hold matters approximately in status quo, and in the meantime to prevent the doing of any acts whereby the rights in question may be irreparably injured or endangered." The Fund for Community Progress v. United Way of Southeastern New England, 695 A.2d at 521 (quoting Coolbeth v. Berberian, 313 A.2d 656, 659 (R.I. 1974)) (emphasis added).
The Court must deny a preliminary injunction when the moving party fails to meet the requirements set forth above by a preponderance of the evidence. Paramount Office Supply, Inc. v. D.A. McIsaac, Inc., 524 A.2d at 1102. For instance, if the moving party fails to establish a likelihood of success on the merits, the Court's analysis ends there. If the moving party does not present a prima facie case, there is no need to consider a balance of the equities. The analysis is complete and a preliminary injunction must be denied. The Fund for Community Progress v.United Way of Southeastern New England, 695 A.2d at 521; Paramount OfficeSupply Company, Inc. v. D.A. McIsaac, Inc., 524 A.2d at 1102.
Finally, a preliminary injunction, particularly a mandatory preliminary injunction, is an "extraordinary remedy." In re State Employees' Unions,587 A.2d 919, 925 (R.I. 1991) (quoting Brown v. Amaral, 460 A.2d 7, 10 (R.I. 1983)). Preliminary injunctions are generally disfavored when their effect grants the ultimate relief sought by the moving party. S.W.Industries, Inc. v. Aetna Casualty Surety Company, 646 F. Supp. 819, 823 (D.R.I. 1986) (citations omitted).
 LIKELIHOOD OF SUCCESS ON THE MERITS
The first issue this Court must address in order to determine whether Crocker has a reasonable likelihood of success on the merits at trial is the applicability of both the Rhode Island Civil Rights Act (RICRA or R.I.G.L. § 42-112-1 et seq.) and the Rhode Island Fair Employment Practices Act (RIFEPA or R.I.G.L. § 28-5-1 et seq.) to his claims.
In Ward v. Pawtucket Police Department, 639 A.2d 1379 (R.I. 1994), the Rhode Island Supreme Court determined that RICRA was enacted in response to the United States Supreme Court decision in Patterson v. McLean CreditUnion, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) in which the Court narrowly interpreted 42 U.S.C. § 1981. See Ward v. PawtucketPolice Department, 639 A.2d at 1381. RICRA "provides broad protection against all forms of discrimination in all phases of employment" and thus provides broader protection to the citizens of Rhode Island than42 U.S.C. § 1981. See id. Plaintiff asserts, and this Court agrees, that "any court decisions limiting the scope of 42 U.S.C. § 1981 have no persuasive weight in interpreting the scope of the RICRA" because RICRA was enacted to provide potential plaintiffs with broader protection against all forms of discrimination and thus serves as a means to avoid the United States Supreme Court's narrow interpretation of § 1981.See Plaintiff's Memorandum In Support Of His Motion For A PreliminaryInjunction, pp. 3-4.
General Laws § 42-112-1 defines the rights to which all Rhode Island citizens are entitled. It states:
 "(a) All persons within the state, regardless of race, color, religion, sex, disability, age, or country of ancestral origin, shall have, except as is otherwise provided or permitted by law, the same rights to make and enforce contracts, to inherit, purchase, to lease, sell, hold, and convey real and personal property, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." R.I.G.L. § 42-112-1
(emphasis added).
Clearly, Crocker's claims against defendants are rightfully brought under RICRA because the mandatory retirement provision in this case amounts to age discrimination which is one of the civil rights' violations that this statute seeks to prevent.
The next issue this Court will address in determining whether Crocker has a likelihood of success on the merits is the applicability of R.I.G.L. § 28-5-1 et seq. to his claims.[1] This Court must determine whether Crocker has indeed made a sufficient showing of age discrimination against him by the defendants under this section.
General Laws § 28-5-2 states:
 "The practice or policy of discrimination against individuals because of race or color, religion, sex, sexual orientation, disability, age, or country of ancestral origin is a matter of state concern. Such discrimination foments domestic strife and unrest, threatens the rights and privileges of the inhabitants of the state, and undermines the foundations of a free democratic state." R.I.G.L. § 28-5-2 (emphasis added).
General Laws § 28-5-1 et seq. prohibits employment discrimination by employers against their employees on the basis of their age. The statute defines the protected class of employees for age discrimination under R.I.G.L. § 28-5-1 et seq. as "anyone who is at least forty (40) years of age." R.I.G.L. § 28-5-6(1). An employer under this section "includes the state and all political subdivisions thereof." R.I.G.L. § 28-5-6(6).
Plaintiff asserts, and this Court agrees, that the Agreement's statement of a "26 year" mandatory retirement term for Cumberland police officers, rather than the declaration of a specific age for compulsory retirement, is a thinly veiled attempt by defendants to circumvent the prohibitions of both R.I.G.L. § 42-112-1 et seq. and R.I.G.L. §28-5-1 et seq. The facts in this case indicate that the earliest a current Cumberland police officer started working was when he was 20 years old, and the latest a current Cumberland police officer started working was when he was 35 years old. As a result, the effect of the mandatory retirement provision on the current Cumberland police officers will be to force the retirement of officers between the ages of 46 and 61 years old. Likewise, the mandatory retirement provision has the same impact as a mandatory minimum retirement age of 46 which is well within the protected class of employees for age discrimination. Thus, the mandatory retirement clause in the Agreement amounts to enough evidence that, if unrebutted, is sufficient to satisfy the burden of proof on the issue of age discrimination under R.I.G.L. § 28-5-1 et seq.
In order to complete its analysis of plaintiff's likelihood of success on the merits, this Court will address the affirmative defenses available to defendants under RIFEPA which may otherwise preclude Crocker from asserting his claims under this act.[2] First, R.I.G.L. § 28-5-7.1
provides exceptions to age discrimination in cases dealing with firefighter and law enforcement officers and states:
 "It is not unlawful for an employer as defined in § 28-5 6(6)(i) or any agency or instrumentality of the state or a political subdivision of the state to fail or refuse to hire or to discharge any person because of the person's age if the action is taken with respect to the employment of a person as a firefighter or as a law enforcement officer and the person has attained the age of hiring or retirement in effect under state statute, city or town ordinance, any collective bargaining agreement, or pension plan in effect on March 3, 1983." R.I.G.L. § 28-5-7.1.
This exception does not apply to plaintiff because it is clear from its face, as well as from the legislative history and case law surrounding its federal counterpart, the Age Discrimination in Employment Act (ADEA) or § 29 U.S.C. § 621 et seq., that it was intended as a grandfather provision.
Under this section, an employer would be able to discharge a police officer because of his or her age only if that provision were in place on March 3, 1983. See R.I.G.L. § 28-5-7.1. The significance of this date relates to a 1986 ADEA amendment which gave police and fire departments time to comply with ADEA by allowing them to continue using hiring and retiring provisions that were in effect on March 3, 1983, the day after the United States Supreme Court's decision in EEOC v. Wyoming, 460 U.S. 226
(1983). This decision, which was issued on March 2, 1983, held that ADEA constitutionally covered both states and their political subdivisions, including police and fire departments, with regard to discriminatory employment practices.
In 1989, the Rhode Island Legislature created what is now known as an amendment to RIFEPA, Exemption of Firefighter and Law EnforcementOfficer, R.I.G.L. § 28-5-7.1, in conformity with ADEA's 1986 amendment regarding the same. The Rhode Island Supreme Court in Power v.City of Providence, 582 A.2d 895, 900 (1990), recognized that the Rhode Island Legislature amended RIFEPA to conform to its federal counterpart, ADEA. See Power v. City of Providence, 582 A.2d at 900. In doing so, the General Assembly expanded some of the language in ADEA, namely the language that reads in relevant part —
 "It shall not be lawful for an employer . . . to fail or refuse to hire or to discharge any individual because of such individual's age if such action is taken with respect to the employment of an individual as a . . . law enforcement officer and the individual has attained the age of hiring or firing in effect under applicable State or local law on March 3, 1983
. . . ." 29 U.S.C. § 623 (i) (1988) (emphasis added),
— to read instead ". . . in effect under any state statute, city or town ordinance, any collective bargaining agreement or pension plan in effect on March 3, 1983 . . . ." R.I.G.L. § 28-5-7.1.
Plaintiff argues, and this Court agrees, that ADEA acts as a floor from which states may provide more protection against age discrimination than ADEA does, but not less. Thus, when the Rhode Island Legislature amended RIFEPA in conformity with ADEA to specify the types of rules and laws which would be considered applicable State and local law, it rightfully expanded the protections provided to Rhode Island citizens under RIFEPA. There is nothing in RIFEPA that changes or contradicts anything in ADEA. Rather, the two statutes relate to one another. As a result, legislative history and case law surrounding ADEA is persuasive in interpreting the meaning of RIFEPA. As it is clear that the 1986 amendment to ADEA was intended as a grandfather clause, it is reasonable to conclude that the 1989 amendment to RIFEPA has the same effect.
The facts indicate that in this case, the 26 year mandatory retirement term was not included in the Agreement until 1990 and did not appear in any collective bargaining agreement before that. Prior to 1990, the Town of Cumberland required law enforcement officers to retire upon their 70th birthday. The current mandatory retirement provision in the Agreement is not protected by the grandfather clause set forth in the statute because it did not take effect until 1990. General Laws § 28-5-7.1 allows the Town to enforce the 70-year-old mandatory retirement provision because it was in place on March 3, 1983. This section does not authorize the Town to reduce the mandatory retirement age for police officers by replacing the 70-year-old mandatory retirement provision with the provision at issue in this case.
Furthermore, R.I.G.L. § 28-5-7.2 provides a "business necessity" exception in impact discrimination and states, in relevant part, that unlawful employment practices are established by proof of disparate impact when "a complainant demonstrates that an employment practice results in disparate impact on the basis of . . . age . . . and the respondent fails to demonstrate that the practice is required by business necessity . . . ." R.I.G.L. § 28-5-7.2(a)(1). Pursuant to the statute, "the term business necessity means essential to effective job performance." R.I.G.L. § 28-5-7.2(c)(1).
There is an important distinction between the broader federal standard for employers to prove business necessity under Title VII and the stricter standard applied to Rhode Island employers under RIFEPA. The enactment of the Civil Rights Act of 1991 partially overturned the United States Supreme Court's decision in Wards Cove Packing Co. v. Antonio,490 U.S. 642; 109 S.Ct. 2115; 104 L.Ed.2d 733 (1989) establishing that an employer asserting this affirmative defense only had to produce, not prove, evidence that a "challenged practice serves, in a significant way, the legitimate employment goals of the employer." Wards Cove Packing Co.v. Antonion 490 U.S. at 659. The standard presently required for employers proving business necessity under Title VII reverts to the standard established by the United States Supreme Court in Griggs v. DukePower Co., 401 U.S. 424 (1971), which requires merely that an employer demonstrate that the challenged practice is "necessary [for] safe and effective job performance." Smith v. City of Des Moines, 99 F.3d 1466, 1477 (8th Cir. 1996). This standard remains distinctively broader than the standard applied to employers under RIFEPA, which requires employers to meet the burden of production and persuasion with regard to whether an employment practice is essential to effective job performance. See
R.I.G.L. § 28-5-7.2(c)(2)(3). Thus, federal case law applying the aforementioned broader standard for Title VII cases is irrelevant to claims brought under RIFEPA.
In this case, defendants would have to show that the 26 year cap on service to the Department is essential to the effective job performance of its officers. In other words, defendants would have to demonstrate that an officer with more than 26 years of service to the department is no longer able to perform duties which are essential to effective job performance. Defendants have not alleged, in their papers to this Court or in any policy statement regarding the mandatory retirement provision in the Agreement, that service beyond 26 years, by virtue of itself, would result in ineffective job performance by any officer in the department. This Court cannot imagine a basis for a provision where a mandatory minimum retirement age of 46 would be considered essential for effective job performance as a police officer.
As it appears, the defendants would likely be unsuccessful with regard to any affirmative defenses available to them under RIFEPA (and under RICRA if this Court applies these defenses to those claims as well). As plaintiff has made a prima facie case for age discrimination against him, there is a reasonable likelihood that plaintiff will succeed on the merits of his claims at trial.
 IRREPARABLE HARM
The next issue this Court must address is whether plaintiff will be irreparably harmed if he is forced to retire after 26 years of service pursuant to the mandatory retirement provision at issue in this case. The facts indicate that Crocker served with the Cumberland Police Department for 26 years, attaining the rank of Captain. Plaintiff will suffer irreparable harm if he is forced to retire from his position as Captain, even if he is ultimately successful in this case and receives equitable and monetary relief, because his career as a police officer in Cumberland will be unsalvageable.
Pursuant to the Agreement, the mayor of Cumberland must appoint someone to fill a vacancy in the position of Captain within 60 days of that vacancy. According to the Agreement:
 "Section 2. Vacancies-Rank of Corporal Through and Including Deputy Chief
 The Mayor shall continue to anticipate and plan for filling vacancies in senior officer's ranks. The Mayor shall continue to make promotions as soon as practicable after a vacancy occurs, but in no event longer than sixty (60) days after said vacancy." Article IV, Section 2, Collective Bargaining Agreement, Town of Cumberland and Cumberland Lodge No. 14 Fraternal Order of Police, July 1, 1998 to June 30, 2001.
As a result of this section, plaintiff will already be separated from his position as Captain long before this Court reaches the merits of his claims. It is uncommon for a court to reinstate a successful plaintiff in an employment discrimination case to his or her former position if that position has been filled by another person during the time it takes to resolve the merits of the case. See e.g. Fire Fighters (IAFF) Local 1784v. Stots, 467 U.S. 561, 579 n. 11 (1984). In light of this trend, the probable outcome of this case, if Crocker is ultimately successful, is most likely the award of monetary damages for any lost wages or benefits due him. Most likely, Crocker will not be reinstated as police Captain. Thus, he will suffer irreparable harm because his career as a Cumberland police officer will be over at the age of 49 and any opportunities for promotion will be terminated.[3]
Plaintiff asserts, and this Court agrees, that a premature end to a career that, to plaintiff, represented job security and opportunity for promotion, cannot be measured in monetary damages regardless of any ultimate recovery on Crocker's part. The only means to prevent this harm at this time is through a preliminary injunction which will, for the time being, prevent the enforcement of the mandatory retirement provision against plaintiff.
 BALANCE OF THE EQUITIES
Because this Court has found a likelihood of success on the merits and an immediate injury in this case, this Court must finally balance whether any hardship to Crocker resulting from his removal as Cumberland police Captain outweighs any hardship to defendants if Crocker is allowed to remain in his position.
The potential hardship to Crocker is outlined above and requires no further discussion. The only possible hardship to the defendants resulting if this injunction is granted is that the Department will no longer be able to remove older, competent police officers in favor of replacing them with younger recruits. This hardly seems like a true hardship when compared to the harm that plaintiff will suffer if this injunction is denied.
Further, in deciding whether or not to grant an injunction, this Court must consider the public interest in denying or granting the requested relief. Employment discrimination based on age is a violation of plaintiff's civil rights. There is the greatest public interest in protecting the civil rights of each citizen of this State. As a result, this Court, after considering the potential hardship to plaintiff, as well as the public's vital interest in upholding civil rights, finds that the equities in this case balance in favor of plaintiff.
After careful consideration of the arguments and evidence presented by the parties in this case, this Court finds that plaintiff has met his burden in satisfying the prerequisites for a preliminary injunction as set forth in Rule 65 of the Rhode Island Rules of Civil Procedure. Thus, this Court grants plaintiff's motion for preliminary injunction. Plaintiff's counsel shall present an appropriate order after notice to opposing counsel.
[1] This Court notes that the Rhode Island Supreme Court has decided that a plaintiff who has an employment discrimination complaint does not have to wait to seek relief in Superior Court until he or she has exhausted his or her adminis trative remedies with the Commission while irreparable harm is being caused to his or her career as a police officer. See Ward v. Pawtucket Police Department, 639 A.2d at 1382. The Court in Ward held that a police officer seeking injunctive relief may proceed to Superior Court without first exhausting her FEPA administrative remedies by filing for injunctive relief under the Rhode Island Civil Rights Act (RICRA), R.I.G.L. § 42-112-1 et seq. In this case, as stated above, Crocker filed his verified complaint under RICRA in accordance with the Court's holding in Ward.
[2] While plaintiff does not concede that the defenses available to the defendants under RIFEPA would be available to them under RICRA, he does address the fact that in light of R.I.G.L. § 43-4-26, dealing with conflicting statutory provisions pertaining to the same subject-matter, the Court may apply any RIFEPA defenses to plaintiff's RICRA claims. R.I.G.L. § 43-4-26 reads in pertinent part:
 "Wherever a general provision may be in conflict with a special provision relating to the same or to a similar subject, the two (2) provisions shall be construed, if possible, so that effect may be given to both; and in those cases, if effect cannot be given to both, the special provision shall prevail and shall be construed as an exception to the general provision." R.I.G.L. § 43-3-26.
Plaintiff asserts that for the purposes of his motion for preliminary injunction, he addresses only the impact discrimination causes of action contained in his complaint, namely, those claims arising under R.I.G.L. § 28-5-1 et seq. Thus, in order to comprehensively address the issue of the aforementioned defenses available under R.I.G.L. § 28-5-1 etseq., this Court will assume arguendo that they are in fact applicable to plaintiff's general age discrimination claims under RICRA as well.
[3] The Rhode Island Supreme Court in Ward held that a police officer suffered irreparable harm when she was removed from a current promotion list and thus denied the opportunity to be promoted.